HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NEWTECH TOUCH-UP SYSTEMS, INC., | Case No. C09-5158RBL |
| Plaintiff, | |
| v. | MARKMAN CLAIM CONSTRUCTION RULING |
| FRONT LINE READY GA LLC, et al., | |
| Defendantd. | |

This matter is before the court following a claims construction hearing pursuant to *Markman v. Westview Instruments, Inc*. 517 U.S. 370 (1996). The parties seek construction of certain claims of U.S. Pat. No. 7,320,811 (the '811 patent). The court has reviewed the materials and heard argument of counsel. The court's construction of this Patent's claims is set forth below.

**A. Introduction**.

Plaintiff is the assignee of the '811 Patent, which is entitled "Method and System for Paint Matching and Re-Touching." The patent relates to a process for applying "touch up paint" to scratches on vehicle paint. Acknowledging that there are many such products and processes in the market designed to accomplish this task, the '811 Patent was based on specific steps and materials, including most importantly for purposes of this Order, the use of four "cloths" to apply the materials in a series of steps. Defendants (former licensees of the '811 Patent) market a competing auto paint repair kit. Plaintiff contends that Defendants' competing product infringes on the '811 Patent.

At issue in this claims construction is the meaning of the term "cloth" as it is used in the '811 Patent. Defendants ask the court to construe the term narrowly, and Plaintiff seeks a broad construction. The parties agree on the construction of five other terms used in the '811 Patent, and the Court adopts the construction of those terms. [*See* Dkt. #29].

**B. The '811 Patent.**

The Doyle brothers invented their auto paint repair method in 2002. They began practicing it and applied for a Patent. After an Amendment, the '811 Patent was issued in 2008. [See Dkt. #33 at Exs. A and B]. Plaintiff Newtech is the assignee of the '811 Patent. The '811 Patent contains 6 claims, and the parties agree on the construction of five of these claim terms: solvent, dissolve, mixture, naptha, and drying additive. The parties' disagreement centers on the use of the sixth term, "cloths."

The '811 Patent claims are fairly straightforward. The Patent claims "an improvement to a method for using a paint cloth to apply touch-up paint[.]"  It involves using "a paint cloth" to apply a solution containing solvent to the painted surface, "wherein the solvent is applied to a first cloth and then to the painted surface by rubbing the first cloth on the painted surface." The '811 Patent then describes applying a mixture including wax and solvent to dissolve the portion of the paint and to produce a residue, "further wherein applying the mixture includes applying the mixture to a second cloth," and describes the time and temperatures required for completing this step.

The third claimed step is "removing the residue including wax and the dissolved paint from the painted surface," which includes "wiping the painted surface with a third cloth." Each of these steps is contained in Claim 1. The final step, outlined in Dependent Claim 4, is "wiping the painted surface with a fourth cloth." Dependent Claim 5 is "the method of Claim 4 wherein the fourth cloth is a micro fiber towel." [Dkt. #33 at Ex. A].

The textual Description and Preferred Embodiment specification of the '811 Patent describes the use of "a first cloth, such as a towel." Preferably, the technician applies the paint to "a second cloth, such as a section of shop towel. The section may, e.g., have a square area of about 3-inches by about 3-inches, although other sizes and materials may be used." The touch-up point may then be applied to the painted surface by "rubbing the second cloth on the painted surface." [Dkt. #33 at Ex. A].

The wax and solvent (naptha) mixture is then applied, preferably "to a third cloth, preferably a shop towel folded three ways[.]" At a given time (depending on environmental and other conditions) the technician

removes this residue, preferably "with a fourth[1] cloth, such as a white, terrycloth towel." Finally the technician wipes the surface with a "fifth cloth, such as a micro fiber towel." [Dkt. #33 at Ex. A].

### C. Standards for Claim Construction.

It is well-settled that claim construction is a matter of law for the court. *Markman v. Westview Instruments, Inc*. 517 U.S. 370 (1996). In construing the language of a claim, the court primarily focuses on so-called "intrinsic evidence" which is comprised of "the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc*., 90 F.3d 1576, 1582 (Fed. Cir. 1996). Specifically, the court first looks to

> the words of the claims themselves, both asserted and nonasserted, to define the scope of the patented invention. Although words in a claim are generally given their ordinary and customary meaning, a patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history.

*Id*. The court then reviews the specification to determine whether

> the inventor has used any terms in a manner inconsistent with their ordinary meaning. The specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication . . . . Thus, the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.

*Id*. The court may then consider the prosecution history of the patent, if in evidence. This history contains the complete

> record of all proceedings before the Patent and Trademark office, including any express representation made by the applicant regarding the scope of the claims. As such, the record before the Patent and Trademark Office is often of critical significance in determining the meaning of the claims. Included within an analysis of the file history may be an examination of the prior art cited therein.

*Id*. at 1582-83.

It is the court's duty to resolve fundamental disputes among the parties as to the scope of a claim term, but it is not the court's duty to construe every claim term, or to repeat or restate every claim term. *See U.S. Surgical Corp. v. Ethicon, Inc*., 103 F.3d 1554, 1568 (Fed. Cir. 1997); *02 Micro Int'l Ltd. v. Beyond Innovation Tech Corp*., 521 F.3d 1351, 1362 (Fed. Cir. 2008).

> Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop

---

[1] This reference apparently predates the Patent's Amendment, and the parties appear to agree that it refers to the third cloth described in the claims. This is also true of the subsequent reference to a fifth (actually fourth) cloth.

ORDER
Page - 3

with the claim. The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.

*See Phillips v. AWH Corp.,* 415 F. 3d 1303, 1312 (Fed. Cir. 2005).

**D.     Construction of Disputed Term(s).**

The parties disagree as to the scope and meaning of the term "cloth" as used in the '811 Patent. Plaintiff argues that only the term "cloth" requires construction, and that the court can and therefore should do so with reference to intrinsic evidence alone.  Plaintiff advocates the following construction of the term "cloth:"

> absorbent material suitable for holding in the hand and carrying out the identified purpose, i.e., applying paint, applying solvent, applying a mixture including a wax and a solvent, wiping the painted surface to remove residue, or wiping the painted surface after removing residue[.]

[See Dkt. #33 at p. 7].

Defendants argue that this construction is too broad, and would improperly include a variety of hand held absorbent items, including a sponge, a cotton ball, a nerf ball or a small cushion.  Defendants advocate instead for the ordinary and customary construction of the term "cloth," meaning a "(1) material formed by knitting, pressing, or felting natural or synthetic fibers; (2) a piece of fabric or material used for a specific purpose."   In the context of this dispute, they ask the Court to construe the term cloth as a towel or rag, specifically:

> In the context of automotive detailing and paint repair, a cloth is a rag or a shop towel. In this context, a cloth or shop cloth cannot be a wad of cotton, a sponge, a paint brush, or an applicator with a sponge, rubber, cloth, or tip or end. It is limited to a rag or shop towel or auto detailing cloth.

[See Parties' Joint Claims Construction, Dkt. #33, Ex. 3].

Defendants emphasize that the '811 Patent clearly depends on, and claims only, the use of the various enumerated cloths, and seeks construction of each of these terms as a new and different cloth: "a paint cloth," "the first cloth ," "a second cloth," "a third cloth," and "a fourth cloth."  They also ask the court to give construction to the *Jepson* format of the Plaintiff's patent claim, which is in the form of "an improvement to a method" for repairing paint scratches and chips.  It argues that this is, as a matter of law, a concession that the subject matter of the preamble is the prior art of another. (*Citing In re Fout*, 675 F.2d 297 (CCPA 1982)).

Plaintiff's primary argument is that the term cloth as used in the '811 Patent is not and was not intended to be exclusive, and that instead one skilled in the art would understand that the term meant any of a variety of handheld, absorbent materials. In Plaintiff's view, the preferred embodiment (a cloth) is only one of a number of such materials that could accomplish the given task, and its patent does not disavow or restrict the term from meaning these materials.

Plaintiff also argues that the prosecution history of its patent supports its construction. It focuses on the difference between the claims in its Patent and those disclosed in the prior art acknowledged in its application, the "IMAC method." That method used a cotton swab or a Microbrush in one method, or a cloth in the other. It argues that one skilled in the art, therefore, would understand that "cloth" is not limited to particular types of cloth.

Finally, relying on the doctrine of claims differentiation, Plaintiff argues that the use of the term "microfiber towel" in the fifth dependent claim supports the conclusion that the other cloths recited should be construed to be broader, and include any type of absorbent, handheld material.

Defendants argue that the Plaintiffs's claims prove too much: First, they point out that every reference to the term cloth in the '811 Patent involves a *towel*. [See Pl.s Opening Br., Dkt. #33 at 8; *compare* Def.'s Response, Dkt. # 43 at 4]. It argues persuasively that plaintiff's attempts to infer from "cloth" the meaning "or any handheld absorbent material" is contrary to the plain meaning of the term and inconsistent with the Patent's claims and its prosecution history.

For example, Plaintiff argues that the reference to "shop towel" and "a 3 x 3 section" are examples, using terms like 'such as" and "e.g'. Defendants again correctly point out that the examples permit variance in the *type* of towel used, and the *size* of the towel used: "a second cloth, *such as a section of shop towel*. The *section* may, e.g., have a square area of about 3-inches by about 3-inches, although other sizes and materials may be used."

The '811 Patent's prosecution history similarly demonstrates that the use of a cloth (or four cloths) was an important part of the Plaintiff's claim. It recognized that the previously patented IMAC system, over which it sought a Patent, already sued a variety of handheld absorbent materials – including Microbrushes, cotton swabs, sponges, and a section of thermal underwear – to apply the touch up paint in various ways. If, as the Plaintiff now contends, the term cloth was intended to mean any handheld

ORDER
Page - 5

absorbent material, it would necessarily include the methods used in the IMAC system; a system it was seeking to "improve" upon in a manner that was entitled to patent protection.

As to claim differentiation, Plaintiff argues that the more specific use of the term "micro fiber towel" in dependent claim 5 suggests and is consistent with a broader meaning of the term cloth in the prior independent claims. But again this argument does not support a construction of the term "cloth" to include any handheld absorbent material. Like the prior references to a terry cloth towel and to a shop rag, the term is a specific type, or subset, of "cloth," and its use does not suggest that the definition of cloth should be expanded to include other handheld absorbent items which are not "cloths as that term is commonly understood, or would be understood by one skilled in the art.

In short, nothing in the '811 Patent suggests anywhere that the claimed invention involves the use of something other than a cloth, as that term is commonly used. Plaintiff's broad construction is rejected as too inclusive. The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction. *See Phillips v. AWH Corp.,* 415 F. 3d 1303, 1312 (Fed. Cir. 2005). The Defendant's proposed construction of the term cloth is, in the context of this patent and this dispute, correct, and the Court therefore ADOPTS this construction:

> In the context of automotive detailing and paint repair, a cloth is a rag or a shop towel. In this context, a cloth or shop cloth cannot be a wad of cotton, a sponge, a paint brush, or an applicator with a sponge, rubber, cloth, or tip or end. It is limited to a rag or shop towel or auto detailing cloth.

\*\*\*

The other point in dispute is whether the specific cloths referenced in the '811 Patent should be construed individually. Defendants argue that the '811 Patent's reference to four different cloths should be construed to mean that a new and different cloth is used in each step described. Plaintiff argues that this is not so, and that a single, suitably large cloth could be used for each step. Plaintiff again ignores the terms of its Patent, and the rules of construction. Defendants' reliance on *Gillette v. Energizer Holdings*,

403 F.3d 1367 (Fed. Cir. 2005) is correct; the enumeration of four specific cloths in the '811 patent means that four separate cloths are to be used to practice the claimed method.

IT IS SO ORDERED.

DATED this 23rd day of December, 2010

_____
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE